UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM BURNS and SANDRA BURNS, )
On behalf of the minor child, JANE DOE,   )
     Plaintiffs,               )
                       )      CIVIL ACTION NO. 1:25-cv-10275-PGL
v.                       )
                       )
BELLINGHAM PUBLIC SCHOOLS,   )
TOWN OF BELLINGHAM, HESRICK   )
RICHARDS, GEENA RICHARDS, H.R.,  )
and EDEL COLON, OSCAR COLON,   )
and J.C.,                    )
     Defendants.         )

**REPLY MEMORANDUM**
**OF DEFENDANTS TOWN OF BELLINGHAM AND BELLINGHAM PUBLIC**
**SCHOOLS IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

NOW COME the Defendants, Town of Bellingham ("Town") and Bellingham Public

Schools ("BPS") (collectively, "Defendants"), in accordance with Federal Rules of Civil

Procedure 12(b)(6) and 12(b)(1), and hereby submit this reply memorandum in further support of

their Motion to Dismiss:

**I.     PROPRIETY OF MOTION TO DISMISS**

"[U]nder ordinary rules of pleading and practice, [an] amended complaint [replaces] the

original complaint lock, stock, and barrel." *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st

Cir. 2008); *see Lopez-Carrasquillo v. Rubianes*, 230 F.3d 409, 412 (1st Cir. 2000) (amended

complaint completely supersedes original complaint, thus the "original complaint no longer

performs any function in the case"). And when, as is the case here, second amended complaints

are filed, the procedural posture of the case is reset. *See, e.g., Saldivar v. Pridgen*, 91 F. Supp.

3d 134, 136 (D. Mass. 2015) (court (Gorton, J.) granted two defendants' motions to dismiss a

second amended complaint); *Quattrucci v. Massachusetts Gen. Hosp.*, No. 17-11250-GAO, 2020 U.S. Dist. LEXIS 48518, at *8 (D. Mass. Mar. 20, 2020) (court (O'Toole, J.) granting motion to dismiss second amended complaint); *see also Shirokov v. Dunlap, Grubb & Weaver, PLLC*, No. 10-12043-GAO, 2012 U.S. Dist. LEXIS 42240, at *1 (D. Mass. Mar. 27, 2012).

Additionally, Federal Rule of Procedure 12(c) allows for a motion for judgment on the pleadings to be made after the pleadings are closed, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c).  Defendants intended to file a motion for judgment on the pleadings given that the Rule 15 pleadings timeline had recently closed.  Motions for judgment on the pleadings are evaluated under the same standard as a motion to dismiss.  *Remexcel Managerial Consultants, Inc. v. Arlequin*, 583 F.3d 45, 49 n.3 (1st Cir. 2009).  Given that a responsive pleading was required to the Second Amended Complaint, Defendants styled their motion as one to dismiss.  See Fed. R. Civ. P. 12; Defendants' Memorandum in Support of Motion to Dismiss, Civ. Doc. No. 33, fn. 1.  And, just like the plaintiff in *Marrero-Gutierrez v. Molina*, a case cited in Plaintiffs' opposition, Plaintiffs "ignore[] the rule's express exception that cross-references subdivision (h)(2) and permits a "defense of failure to state a claim upon which relief can be granted" to be raised "by motion for judgment on the pleadings." Fed. R. Civ. P. 12(h)(2). 491 F.3d 1, 7 (1st Cir. 2007) (differentiated because the lower court in *Marrero* decided a motion for judgment on the pleadings); See Fed. R. Civ. P. 12(a)(1)(A); (Plaintiff's Opposition, Civ. Doc. No. 44, at p. 4).

Plaintiffs argue prejudice and cite the interest in "the orderly administration of discovery," but provide no justification for it.  (Plaintiffs' Opp. at p. 4).  Plaintiffs have served no discovery, just added new parties to the case, and fail to explain how Defendants' motion in any way prejudices Plaintiffs.

Finally, Defendants' citations to documents not attached to the complaint is proper where Plaintiffs cite to those documents and rely upon them to form the basis of their allegation.  It is beyond question that Plaintiffs' claim that Student 3 was ordered not to be within 100 yards of Plaintiff is incorrect, and Plaintiffs do not challenge the authenticity of the HPO.  *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996) (*citing Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993) (explaining that the main problem of looking to documents outside the complaint—lack of notice to plaintiff—is dissipated "where plaintiff has…relied upon these documents in framing the complaint").

 Based on the foregoing, Defendants properly filed this motion in response to the Second Amended Complaint.

## II.      SECTION 1983

Plaintiffs provide no basis for their claim the alleged failures were a result of any custom or policy, a requirement for any *Monell* claim.  That something occurred does not a policy, or custom, make.  Moreover, Plaintiffs' claim that the policy at issue is "BPS repeated[] fail[ure] to inform its staff of safety measures, failed to monitor compliance, and left a vulnerable student responsible for self-reporting and removing herself from threatening situations" is undercut by the fact that two instruments are at issue: the alleged safety plan involving Student 1, and the HPO involving Student 3.  (Plaintiffs' Opp. at p. 6).  These are discrete vehicles, one of which (the HPO) is a civil order specific to a student and not enforceable by the Defendants.

Plaintiffs plead no allegations of instances in which other safety plans were not followed, no allegations that staff unaware of the alleged safety plan said it is usual practice for them not to be made aware of safety plans, and, overall, no allegations that suggest there was any policy or custom behind the alleged failure to implement the alleged safety plan regarding Student 1. Similarly, Plaintiffs make no allegations of a similar nature suggesting the HPO was not

enforced according to any custom and practice. And, given that the HPO actually called for only 3 yards of separation between Jane and Student 3, this eliminates any need for Defendants to have ensured the two students did not attend the same school assembly—rendering Plaintiffs' claim that "failure occurred in every instance where the school promised protection" incorrect. (Plaintiff's Opp. at p. 6). Plaintiffs have alleged nothing that suggests—other than, at best, an instance where Student 3 *sat behind Jane*—Student 3 did not comply with the HPO, or that Defendants were in any way aware that Student 3 was non-compliant with it. Plaintiffs' claims require the Court to engage in mere conjecture about the circumstances that led to Student 3 sitting behind Jane.

Plaintiffs allege the threat was "serious and credible," yet curiously now conflate the safety plan with Jane's IEP, arguing the school's failure to carry out the alleged safety plan somehow implicated Jane's IEP. (Plaintiffs' Opp. at p. 7). These are discrete documents, neither relating to the other. The safety plan—to the extent it exists—was clearly intended to prevent future harassment. And no harassment by Student 1 occurred, ever. As far as Plaintiffs' allegations are concerned, Student 1 never interacted with Jane again. Jane was not "made to interact regularly" with Student 1. (Though suddenly, in their opposition, Plaintiffs argue Student 1 did interact with Jane. (Plaintiffs' Opp. at p. 7).) He merely existed in the same vicinity as she was, exercising his own right to a public education.

Overall, Plaintiffs' *ipso facto* argument that because it happened (i.e. the alleged safety plan was not enforced), a policy or custom must be the root cause of this. But without more— meaning any factual allegation that raises the "mere possibility" to something that plausibly suggests entitlement to relief—Defendants are entitled to dismissal of Plaintiffs' claims.

### III.    TITLE IX

The "harassing" conduct the Court should consider is that of Student 1.  Jane was not subjected to any further allegedly harassing conduct after the safety plan was put in place. Whether Student 1's conduct of merely being in the same vicinity as Jane after the alleged safety plan was put in place cannot meet the standard for objectively offensive conduct.  In *Davis v. Monroe Cnty. Bd. Of Educ.,* cited by Plaintiffs, actual further harassing conduct occurred after the defendant-school was notified of the harassment.  526 U.S. 629, 632 (1999).  Plaintiffs do not allege Student 1 was banned from school (he wasn't), and his mere presence in Jane's vicinity cannot constitute the "severe, pervasive, and objectively offensive" harassment contemplated in *Davis*, which involved a student who acted sexually toward the plaintiff and rubbed his body against her in a sexual manner while the school allegedly refused to take action and other girls were being similarly harassed by the same student. Id. at 634.  The facts are markedly different here, where Student 1, by all allegations, went about his education in the same building as Jane and did not approach or interact—or rub his body against—Jane.  Plaintiffs also provide no authority for their claim that "forced proximity after a known sexual threat is itself a continuing harm." (Plaintiffs' Opp. at p. 12).  "The deliberate indifference standard of course requires that the funding recipient's actions -- or failure to act -- caused the student's subsequent harassment in some way or made the student "liable or vulnerable" to harassment." *Davis*, 526 U.S. at 645.

Plaintiffs' arguments at pp. 13-14 of her opposition are clearly arguments that Defendants were non-compliant with Jane's IEP—despite the fact their allegations do not provide any specifics on what Jane's anxiety-related accommodations actually were.  Claims for non-compliance with an IEP are subject to administrative exhaustion, a required step that Plaintiffs did not take.

Plaintiffs' claim that Student 3's conduct was "plainly sex-based" because Jane was "friends" with a student that Student 3 was dating stretches the imagination, and Plaintiffs provide no authority that Title IX extends that far. (Plaintiffs' Opp. at p. 14). Even if the threadbare allegation of being "friends" with someone were sufficient to plead this, it does not satisfy the standard for harassment on the basis of sex. But this allegation is conclusory, and Plaintiffs plead no other allegations to suggest that, when Student 3 was hitting, pushing, kneeing, etc. Jane that Student 3 did so in any manner to suggest the alleged bullying was sex-based.

As to Plaintiffs' arguments that authorized officials had notice of further harassing conduct, they misconstrue Defendants' arguments. While school officials may have had notice of Student 1's alleged statements, and Student 3's alleged bullying, the SAC alleges no further harassing conduct of which any authorized school official had notice.

Overall, Plaintiffs claim Jane was not protected from a harm that did not occur, and appears to be an attempt to hold Defendants liable for conduct of which it had no notice.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiffs ignore Defendants' argument that the facts alleged in this case are precisely the type that needs to benefit from the expertise of a BSEA hearing officer, one of the grounds on which Defendants argue in favor of exhaustion.

## V.    ADA

Plaintiffs argue that the failure of the Defendants to adhere to the alleged safety plan and HPO amount to disability-based discrimination, but provide no argument in support of why Defendants' conduct was discriminatory. They do not allege, for instance, that Defendants treated disabled students less favorably than typically-abled students, or that Defendants had a policy of ignoring any harassment complaints by disabled students.

6

## VI.    STATE-BASED CLAIMS

Plaintiffs attempt to characterize Student 3's statements to others about the HPO and Jane's hypersensitivity into further harassment by Student 3 to get around the fact that Student 3 never bullied Jane once after the HPO was in place should be unpersuasive.  (Plaintiffs' Opp. at 20).  Plaintiffs cannot get around the fact that Jane was not subjected to any further harassment by Student 1, or bullying by Student 3.

Plaintiffs acknowledge, with respect to Defendants' defective presentment argument, that they made presentment to Chuckran (the Chief Financial Officer of the Town of Bellingham) and to the members of the Board of Selectmen.  However, there was no Chair of the Board of Selectmen at the time, and "Chief Financial Officer" is not one of the offices enumerated in M.G.L. c. 258, § 4.  The purpose of presentment is to ensure delivery of the complaint to the person responsible for assessing and settling claims.  A Chair acts as a board's presiding officer, representing it in official capacities (e.g., signing documents, coordinating responses). Directing presentment to the Chair ensures it reaches the entity with decision-making power for investigation and settlement, streamlining the process without scattering claims across departments.

Respectfully submitted,

Defendants,
BELLINGHAM PUBLIC SCHOOLS,
TOWN OF BELLINGHAM

By their attorneys,

*/s/ Alexandra M. Gill*
Douglas I. Louison (BBO# 545191)
Alexandra "Sasha" M. Gill (BBO# 663040)
LOUISON, COSTELLO, CONDON & PFAFF, LLP
10 Post Office Square, Suite 1330
Boston, MA 02109
(617) 439-0305
dlouison@lccplaw.com
sgill@lccplaw.com

Dated: November 7, 2025

## CERTIFICATE OF SERVICE

I, Alexandra M. Gill, certify that on November 7, 2025, I caused a true and correct copy of the foregoing motion and all supporting documents to be served via the Court's CM/ECF system, upon all counsel of record who are registered users of the CM/ECF system, pursuant to Local Rule 5.4 and Fed. R. Civ. P. 5(b)(2)(E) and via first-class mail to all non-registered parties.

*/s/ Alexandra M. Gill*
Alexandra M. Gill