UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

WILLIAM BURNS and SANDRA BURNS, )
On behalf of the minor child, JANE DOE,   )
     Plaintiffs,                 )

                                 )     CIVIL ACTION NO. 1:25-cv-10275-PGL
v.                            )

                               )
BELLINGHAM PUBLIC SCHOOLS,   )
TOWN OF BELLINGHAM, HESRICK   )
RICHARDS, GEENA RICHARDS, H.R.,   )
and EDEL COLON, OSCAR COLON,   )
and J.C.,                   )
     Defendants.         )

## SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION TO DISMISS
## BY DEFENDANTS TOWN OF BELLINGHAM
## AND BELLINGHAM PUBLIC SCHOOLS

NOW COME the Defendants, Town of Bellingham ("Town") and Bellingham Public

Schools ("BPS") (collectively, "Defendants"), with permission of the Court (Levenson, M.J.)

following the hearing on Defendants' Motion to Dismiss (ECF Doc. No. #32), and hereby

submit this supplemental briefing on the issue of whether a plaintiff's emotional vulnerability

may be considered in evaluating a Title IX claim in the context of Fed. R. Civ. P. 12(b)(6).  The

Court inquired whether any authoritative sources factored the emotional vulnerability and/or

disability of a victim into the deliberate-indifference analysis under Title IX, including whether

Defendants' response should be viewed in the context of Jane's mental health condition and/or

identified disabilities to the extent these are alleged.

    **I.**      **THE "MORE VULNERABLE" STANDARD UNDER *DAVIS* AS
               INTERPRETED BY *FITZGERALD***

In *Davis v. Monroe Cnty. Bd. of Educ.*, the Supreme Court held that Title IX funding recipients "may run afoul of Title IX not merely by 'caus[ing]' students to undergo harassment but also by 'mak[ing] them liable or vulnerable' to it." *Fitzgerald v. Barnstable Sch. Comm.*, 504 F.3d 165, 172 (1st Cir. 2007), *citing Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 645 (1999).  In *Fitzgerald*, the plaintiffs alleged the victim "had several unsettling interactions with [the harasser] as the school year progressed," some of which were casual encounters in the hallways with "the most notable interaction" having occurred during a mixed-grade gym class wherein a gym teacher "randomly required [the victim] to give [the harasser] a "high five."  504 F.3d at 170.  Noting that the *Davis* court's "broader formulation clearly sweeps more situations" within the zone of potential Title IX liability than the district court had acknowledged, (*id*. at 172), the First Circuit did not consider whether merely encountering the harasser could give rise to the claim and instead focused on the post-notice *interactions* between the harasser, including an incident of forced physical interaction between the victim and harasser that occurred at the direction of a gym teacher.  *Fitzgerald*, 504 F.3d at 170, 172-173; *see id* at 168 (noting that in "certain limited circumstances" an educational institution may be liable for student-on-student sexual harassment); *see id*. at 172 ("To the extent that it held that harassment cannot be "caused" if that harassment never occurs, the district court was on sound footing.").  Here, however, Plaintiffs allege no instances of forced post-notice interactions or any post-notice interactions, at all—only that Jane was forced to *see* her alleged harasser at lunch and various other times.

## II.    PLAINTIFFS' EMOTIONAL SENSITIVITIES ARE NOT CONTEMPLATED IN *FITZGERALD*

Under *Fitzgerald,* "a single instance of peer-on-peer harassment theoretically might form a basis for Title IX liability if that incident were vile enough and the institution's response, after learning of it, unreasonable enough to have the combined systemic effect of denying access to a

scholastic program or activity." *Fitzgerald,* 504 F.3d at 172-173.  But this bar is a high one; the *Fitzgerald* court cited *Williams v. Board of Regents*, which held that "to have a 'systemic effect' of denying the victim equal access to an educational program or activity . . . gender discrimination must be more widespread than a single instance of one-on-one peer harassment . . . ." 477 F.3d 1282, 1297 (11th Cir. 2007) (where a student athlete had been disciplined by two colleges for sexual assault and sexual harassment); *see id.* at 1298-99 (noting "extreme" nature of the plaintiff's allegations, where she had been raped by multiple fellow students and the school did not take corrective action for 11 months).  The *Fitzgerald* court's citation to *Williams* indicates it was contemplating not the plaintiff's emotional sensitivities but the objective reasonableness of forced physical interaction between the victim and the harasser.  And while the *Fitzgerald* court did not expand on the universe of potential scenarios in which Title IX liability might attach in these types of cases, its phrasing strongly suggests it was contemplating a scenario in which a harassing, discriminatory or abusive teacher or fellow student exercised some direction or control, post-notice, over the plaintiff.  *See Fitzgerald*, 504 F.3d at 172, *citing Wills v. Brown Univ.*, 184 F.3d 20, 27 (1st Cir. 1999) ("On some cases, merely to maintain a harasser in a position of authority over the victim, after notice of prior harassment, *could* create new liability." (Emphasis added.)).

Defendants have identified no authoritative case in which a court held that the reasonableness of a defendant's response—and by extension, whether the defendant acted with deliberate indifference—should be viewed in light of the unique, general sensitivities of the plaintiff.  Conversely, the First Circuit has rejected the argument that a defendant's failure to account for a plaintiff's disability by not providing him with an aide to escort him to his locker amounted to deliberate indifference.  In *Porto v. Tewksbury*, the plaintiffs posited that, because the victim was mentally disabled, a teacher's aide should have accompanied the victim to his

locker.  488 F.3d 67, 74 (1st Cir. 2007).  The First Circuit held that "this suggests only that Tewksbury may have been negligent; to prove deliberate indifference, [the plaintiffs] had to show at least" that the school knew the failure to accompany the student to his locker would result in a "high degree of risk [the victim] would be subject there to inappropriate sexual behavior by [the harasser]."  *Id.*

In *Wills*, cited by the *Fitzgerald* court and in which the harasser was a professor of a university course in which the victim was enrolled, the First Circuit did not decide the plaintiff's Title IX claim brought on the theory of continuing harassment (on the grounds that the plaintiff had waived it), but characterized the plaintiff's theory "a very weak one" and stated "it would not be easy to describe [a harasser's] mere presence on a large campus as harassment of [the victim]."  184 F.3d at 27.  As weak as the plaintiff's theory may have been, it was undoubtedly still buoyed by the distinguishing fact that the harasser did, in fact, exercise some degree of authority over the plaintiff in his capacity as a professor at the university.

### III.   PLAINTIFF'S FACTUAL ALLEGATIONS REGARDING ANXIETY AND ACCESS TO COUNSELING UNDER HER IEP DO NOT PERMIT THE INFERENCE THAT JANE'S EXCLUSION FROM SCHOOL WAS A KNOWN OR OBVIOUS CONSEQUENCE

Even if a plaintiff's mere emotional sensitivity were appropriate for consideration, however, Plaintiffs need to plausibly allege Defendants were aware of it.[1]  Instead, Plaintiffs merely allege "BHS teachers" and "BHS staff" were notified of repeated failures of the safety

---

[1] *See Porto v. Tewksbury*, 488 F.3d at 75 ("Because continued sexual harassment was not a 'known or obvious consequence' of the school's inaction…Tewksbury cannot have been deliberately indifferent to [the student's] plight."); *id*. at 73 (noting requirement for a "plainly obvious consequence" in holding a municipality liable in analyzing deliberate indifference).  But Plaintiffs do not allege Defendants (or anyone, for that matter) were notified Jane Doe was impacted by Student 1's presence in her vicinity after the safety plan had been put in place, or that Jane was so visibly affected by his presence that Defendants should have understood this was the case.

plan to separate Jane Doe from Student 1—not that she notified anyone authorized to take corrective action. (Second Amended Complaint ("SAC"), ¶¶ 22, 24). Plaintiffs also do not allege Jane Doe's IEP identified any such vulnerability. (See SAC, ¶ 15 ("Jane was on an Individualized Education Plan (IEP), which allowed her accommodations for extra time, access to counseling, and supported Math and English Language Arts classes. This IEP was met (*sic*) to address her learning disabilities and the symptoms of her anxiety.")). To consider it plausibly alleged from this fact, alone, that Jane Doe had a condition whereby school officials should have known that merely laying eyes on Student 1 would result in her exclusion from school would require too great an inference under *Twombly*, and too broad an interpretation of the dicta in *Fitzgerald*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (complaint must contain "enough fact to raise a reasonable expectation that discovery will reveal evidence" of wrongful conduct). Permitting Jane Doe to merely lay eyes on Student 1 also cannot be "clearly unreasonable" given the setting (at lunch and in classrooms supervised by teachers), where Student 1 could not reasonably be expected to carry out his alleged threat or otherwise subject Jane to further harassment and Defendants were not aware of the impact that merely seeing Student 1 is alleged to have had on Jane.

Respectfully submitted,

Defendants,
BELLINGHAM PUBLIC SCHOOLS,
TOWN OF BELLINGHAM

By their attorneys,

*/s/ Alexandra M. Gill*
 Douglas I. Louison (BBO# 545191)
 Alexandra "Sasha" M. Gill (BBO# 663040)
 LOUISON, COSTELLO, CONDON & PFAFF, LLP
 10 Post Office Square, Suite 1330
 Boston, MA 02109
 (617) 439-0305
 dlouison@lccplaw.com
 sgill@lccplaw.com

Dated: January 14, 2026

## CERTIFICATE OF SERVICE

I, Alexandra M. Gill, certify that on January 14, 2026, I caused a true and correct copy of the foregoing motion and all supporting documents to be served via the Court's CM/ECF system, upon all parties and counsel of record who are registered users of the CM/ECF system, pursuant to Local Rule 5.4 and Fed. R. Civ. P. 5(b)(2)(E) and via first-class mail to all non-registered parties.

*/s/ Alexandra M. Gill*
Alexandra M. Gill

6