UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WILLIAM BURNS, and SANDRA BURNS, on behalf of their minor child, JANE DOE, <br><br> Plaintiffs, <br><br> v. <br><br> BELLINGHAM PUBLIC SCHOOLS, THE TOWN OF BELLINGHAM, EDEL COLON, OSCAR COLON, and J.C., <br><br> Defendants. | C.A. No. 25-CV-10275-GAO |

**PLAINTIFFS' OPPOSITION TO COLON DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiffs William Burns and Sandra Burns ("Plaintiffs"), on behalf of their minor child Jane Doe ("Jane"), respectfully submit this Opposition to Defendants J.C., Edel Colon, and Oscar Colon's (collectively, "the Colon Defendants") Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 72).

## I.    BACKGROUND AND OVERVIEW

The Colon Defendants' Motion to Dismiss rests on a flawed factual premise: that J.C.'s alleged conduct was "chronologically antecedent" to and "legally independent" from the federal claims asserted against Bellingham Public Schools ("BPS") and the Town of Bellingham. This characterization ignores the well-pleaded allegations of the Second Amended Complaint, which establish that J.C. continued to engage in harmful conduct against Jane *after* the Harassment Prevention Order ("HPO") was entered, and that BPS's failure to respond to those ongoing violations forms a central basis for the federal claims. Because the state-law claims against J.C.

and the federal claims against BPS arise from a common nucleus of operative fact, this Court has supplemental jurisdiction under 28 U.S.C. § 1367(a), and the Motion should be denied.

The Second Amended Complaint alleges that Jane was subjected to pervasive physical abuse and bullying at the hands of J.C., who targeted Jane because of Jane's friendship with another student that J.C. was dating. Second Am. Compl. ¶ 30. Daily, J.C. physically abused Jane by punching and slapping her in the head, punching her in the arm, pushing her into railings and stairs, punching her in the stomach, and kneeing her in the stomach. *Id.* ¶ 31. BHS staff never, at any point, put themselves in a position to observe or prevent the abuse and bullying that Jane experienced at J.C.'s hand. *Id.*

Plaintiffs and Jane brought the sexual harassment and physical abuse to BHS's attention, but BHS failed and refused to create a safety plan to protect Jane. *Id.* ¶ 32. As a result, Plaintiffs and Jane were forced by BHS's indifference to seek intervention from local police and obtained a Harassment Prevention Order pursuant to G.L. c. 258E against J.C. *Id.* ¶ 33. The HPO ordered J.C. to abstain from abusing or harassing Jane, to refrain from contacting Jane via social media, telephone, or in writing, and to stay at least three yards away from Jane at all times. *Id.* BHS and its staff were immediately made aware of the HPO and its requirements. *Id.* ¶ 34.

Critically, J.C.'s harmful conduct did not cease with the issuance of the HPO. Despite BHS's knowledge of the HPO, BHS staff allowed J.C. to sit directly behind Jane at a school assembly, and BHS staff did nothing to move J.C., causing Jane to leave the assembly for her own safety. *Id.* ¶ 35. On many subsequent occasions, J.C. bragged and spread rumors to other BHS students about her consistent abuse of Jane, the Court's involvement in trying to prevent that abuse, and the terms of the HPO. *Id.* ¶ 37. J.C. also told other students that Jane was being overly sensitive about the situation. *Id.* Jane brought J.C.'s post-HPO actions to BHS's attention,

but BHS staff did nothing to address the spread of the rumors or the effect they had on Jane's mental and physical well-being. *Id.* ¶ 38.

## II.    LEGAL STANDARD

A court must have subject matter jurisdiction over each claim in an action. Supplemental jurisdiction under 28 U.S.C. § 1367(a) permits a federal court to hear state-law claims that "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The test for whether a state-law claim forms part of the same case or controversy is whether it arises from a "common nucleus of operative fact" with the claims over which the court has original jurisdiction. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). Claims share a common nucleus of operative fact when "the federal claim and the state claim . . . derive from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Id.*

On a motion to dismiss, the Court must accept the well-pleaded allegations of the Complaint as true and draw all reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III.    ARGUMENT

### A.    J.C.'s Post Harassment Prevention Order Conduct Creates a Common Nucleus of Operative Fact with the Federal Claims

The Colon Defendants' central argument is that J.C.'s conduct was "chronologically antecedent" to the institutional failures that give rise to the federal claims, and therefore the claims against J.C. are "legally independent" from the federal claims. This argument fails because it ignores the well-pleaded allegations that J.C. continued to engage in harmful and harassing conduct *after* the HPO was issued, conduct which highlights both the outrageousness

of J.C.'s conduct and the substantial level of indifference demonstrated by BPS. *See* Second Am. Compl. ¶¶ 35, 37–40.

The Second Amended Complaint alleges that after the HPO was in place, J.C. sat directly behind Jane at a school assembly, in direct violation of the HPO's requirement that she stay at least three yards away from Jane at all times, and BHS staff did nothing to intervene. Second Am. Compl. ¶¶ 33, 35. The Complaint further alleges that on many subsequent occasions following the HPO, J.C. bragged about her abuse of Jane, publicized the terms of the HPO, and told other students that Jane was being overly sensitive. *Id.* ¶ 37. Jane brought these ongoing violations to BHS's attention, but BHS staff again failed to act. *Id.* ¶ 38.

These post-HPO acts by J.C. are not mere "background context" as the Colon Defendants suggest. They are the very conduct to which BPS was deliberately indifferent. The federal claims under Title IX (20 U.S.C. § 1681 and 42 U.S.C. § 1983) are predicated, in substantial part, on BPS's failure to enforce the HPO, its failure to protect Jane from J.C.'s ongoing harassment and abuse after the HPO was entered, and its failure to address J.C.'s retaliatory rumor-spreading. *Id.* ¶¶ 34–35, 37–40. To prove the federal claims of deliberate indifference and constitutional deprivation, Plaintiffs will need to establish what J.C. did, that the school knew about it, and that the school failed to respond. The evidence of J.C.'s conduct, both before and after the HPO, is therefore not merely relevant but essential to the adjudication of the federal claims.

The Colon Defendants' assertion that "whether or not J.C. actually assaulted Jane Doe has no bearing on whether the school appropriately responded to reports of those allegations" fundamentally misapprehends the nature of the federal claims. Under Title IX, a plaintiff must show that the harassment was "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Davis v. Monroe County Bd. of*

*Educ.*, 526 U.S. 629, 633 (1999). The nature and severity of J.C.'s conduct is thus directly relevant to establishing the federal claims against BPS. Similarly, under § 1983, whether BPS violated Jane's constitutional rights by failing to act depends on the severity and pervasiveness of the harassment that BPS allegedly ignored. The fact-finder cannot assess the adequacy of BPS's response without understanding the full scope of J.C.'s conduct, including her post-HPO violations. Revealing the full scope of J.C.'s conduct is the same inquiry that is required to adjudicate both the Federal and the State law tort claims with respect to J.C., and her parents as vicariously liable parties.

B.        The Claims Against J.C. and the Federal Claims Would Ordinarily Be Tried Together

Under *Gibbs*, the touchstone of supplemental jurisdiction is whether a plaintiff "would ordinarily be expected to try [the claims] all in one judicial proceeding." 383 U.S. at 725. Here, the state-law tort claims against J.C. (Counts VIII, IX, and X for battery, assault, and intentional infliction of emotional distress) and the federal claims against BPS (Counts I through VII) arise from the same continuous course of conduct: J.C.'s physical abuse of Jane, the issuance of the HPO, J.C.'s continued harassment after the HPO, and BPS's failure to respond at each stage.

The Colon Defendants contend that the claims would "necessitate a separate discovery plan" and that information obtained in discovery for the tort claims "would not substantively contribute to the adjudication of the claims brought against" BPS. This is plainly incorrect. Discovery regarding J.C.'s conduct, both before and after the HPO, is essential to proving the federal claims against BPS. Plaintiffs will need testimony and evidence concerning the nature and severity of J.C.'s abuse, J.C.'s violations of the HPO, what BPS knew about these events and when, and what, if any, communications BPS had with J.C. to ensure the safety of Jane. This same evidence will be used to prove the tort claims against J.C. Far from requiring a separate

discovery plan, the claims share substantial overlapping facts and would be most efficiently and fairly resolved in a single proceeding. Moreover, forcing Plaintiffs to litigate the tort claims against J.C. in a separate state-court proceeding would result in duplicative litigation, wasteful expenditure of judicial resources, and the risk of inconsistent factual findings regarding the same underlying events.

C.  The Court Should Not Decline Supplemental Jurisdiction Under § 1367(c)

The Colon Defendants alternatively request that the Court decline to exercise supplemental jurisdiction under § 1367(c), arguing that the state-law tort claims against J.C. and her parents "would substantially dominate, require credibility-intensive proceedings, and materially complicate discovery and trial". None of the discretionary factors in § 1367(c) counsel in favor of declining jurisdiction here. The state-law claims against J.C. do not raise novel or complex issues of state law; battery, assault, and intentional infliction of emotional distress are well-established common-law torts. *Id*. The state-law claims do not substantially predominate over the federal claims; to the contrary, the federal claims against BPS encompass the greater number of counts (Counts I through VII) and involve the more complex legal questions. *Id*. There are no exceptional circumstances or other compelling reasons to decline jurisdiction. Instead, the interests of judicial economy, convenience, and fairness to the litigants strongly favor retaining jurisdiction over all claims. *Id*.

D.  The Claims Against Edel and Oscar Colon Are Properly Before This Court

Finally, the vicarious liability claim against J.C.'s parents, Edel and Oscar Colon (Count XI), is derivative of J.C.'s tort liability pursuant to M.G.L. ch. 231, § 85G. Because the Court has supplemental jurisdiction over the tort claims against J.C. for the reasons stated above, the derivative vicarious liability claim against her parents likewise falls within the Court's

supplemental jurisdiction. The claim against J.C.'s parents will not require any additional discovery beyond what is already necessary for the claims against J.C. herself, and resolving all claims in a single proceeding serves the interests of judicial economy.

E.    <u>The Motion to Dismiss is Procedurally Improper</u>

To the extent the arguments made in the supplemental briefing by defendants H.R. and his parents are referenced and relied on here, Plaintiffs sustain their contention that the filing of the Motion to Dismiss after filing an Answer to the Second Amended Complaint is improper and should be denied for this reason alone.

## IV.    CONCLUSION

The state-law claims against J.C. and her parents share a common nucleus of operative fact with the federal claims against BPS because J.C.'s conduct, particularly her post-HPO violations, is inextricably intertwined with BPS's alleged deliberate indifference and institutional failures. This Court properly has supplemental jurisdiction under 28 U.S.C. § 1367(a), and no basis to discretionarily decline that jurisdiction under § 1367(c). For the foregoing reasons, Plaintiffs respectfully request that this Court DENY the Colon Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

Plaintiffs,
By their attorney,


*/s/ Hannah N. Konowitz*

_____
Hannah N. Konowitz, Esq. BBO#704592
Kerstein and Konowitz Law Group, LLP
20 Walnut Street, Suite 201
Wellesley, MA 02481
781-705-2342
hkonowitz@kandklg.com

*Sol J. Cohen*

_____
Sol J. Cohen, Esq., BBO # 630776
Coren & Lichtenstein, LLP
60 Walnut Street, 4th Floor
Wellesley, MA 02481
(781) 997-1600
EMAIL:  scohen@cl-lawgroup.com

DATE: March 20, 2026

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on March 20, 2026.

*/s/ Hannah N. Konowitz*

Hannah N. Konowitz